IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| BAILEY WHITE, | ) | |
| | ) | Lead Case No. 1:19-cv-304 |
|     *Plaintiff,* | ) | |
| v. | ) | Member Case No. |
| | ) | 1:19-cv-305 |
| HAMILTON COUNTY GOVERNMENT, | ) | |
| *et al.,* | ) | Judge Travis R. McDonough |
| | ) | |
|     *Defendants.* | ) | Magistrate Judge |
| | ) | Christopher H. Steger |
| | ) | |

## ORDER

Before the Court is the parties' joint motion to approve a settlement of the claims between the parties, which implicates the interest of a minor ("RGK"), pursuant to Tennessee Code Annotated § 29-34-105 (Doc. 780). Tennessee Code Annotated § 29-34-105 provides:

> (a)(1) In any tort claim settlement involving a minor, the court shall conduct a hearing at which the minor and legal guardian are present if the tort claim settlement:
>
>     (A) Is a settlement of ten thousand dollars ($10,000) or more;
>
>     (B) Is a structured settlement; or
>
>     (C) Involves a minor who is not represented by an attorney licensed to practice in this state.
>
> (2) Notwithstanding subdivision (a)(1), the court may, in its discretion, conduct the hearing in chambers or by remote communication and may excuse the minor from attending the hearing.

When minors are involved in a settlement meeting the criteria of this statute, district courts must independently determine whether the settlement is in the minors' best interest. *See Green v. Nevers*, 111 F.3d 1295, 1301–02 (6th Cir. 1997); *see also* Tenn. Code Ann. § 31-1-121.

The Court has reviewed the motion for settlement approval (Doc. 780) and held an in-person hearing concerning the parties' motion on July 29, 2024, at 9:00 a.m (Doc. 779).  Counsel for Plaintiff and Defendants were present for the hearing.  Bailey White attended.  She, along with RGK, are the surviving children of the late Shandle Riley.  Diane Smith, the legal guardian of RGK, was also present.  (Doc. 780, at 1–2.)

The facts that Defendants acknowledge are worth noting.  Daniel Wilkey, then a Hamilton County Deputy, stopped Shandle Riley for improper window tint.  (Doc. 749, at 2.)  During the stop, Riley acknowledged she had "a marijuana roach in her car in a cigarette pack." (*Id*.)  Wilkey drafted "a citation in lieu of arrest" to give her.  (*Id.*)  At some point before issuing the citation, Wilkey offered to baptize Riley.  (*Id.* at 7.)  Once he issued the citation, Riley "followed [Wilkey] to a public boat ramp on Soddy Lake wherein [Wilkey] removed his police clothing, entered the water in his undergarments with a fully-clothed Ms. Riley[,] and baptized her." (*Id.* at 2.)  The United States Sixth Circuit for the Court of Appeals called it "a traffic stop that ended like no other of which we are aware."  (Doc. 579, at 2.)  To say the least, intermingling state-sponsored force with state-sponsored religion is not ideal.  The claim against Wilkey is compelling.

Despite Wilkey's conduct, only Hamilton County will pay $100,000 to settle the claims.  Wilkey, who baptized Riley—RGK's mother—arguably under color of law, pays nothing.  In fact, Wilkey, as far as the Court can tell, contributes naught to the settlement.  Wilkey's wanting involvement in the settlement bears a striking contrast to the participation of Hamilton County,

ostensibly the much-less-blameworthy party.[1]  The parties have not offered an explanation for this incongruence.

Presumably, a significant judgment against Wilkey would be difficult to collect.[2]  Most people would be challenged to fund a settlement in excess of the $100,000 Hamilton County has agreed to pay.  However, RGK's interests could have also been served by non-monetary pledges from Wilkey.  The most obvious such provision, for example, would have called for Wilkey not to seek another law-enforcement job in order to protect RGK and other members of the public.  In practice, however, the absence of such a term should make no difference.  Wilkey's undisputed behavior was remarkable enough that no reputable law-enforcement agency is likely to consider hiring him in the future.  No such agency is likely to willingly expose itself to the significant risk of litigation and liability that will accompany Wilkey's employment.

In summary, unfortunately for RGK, the predominantly responsible party, Wilkey, likely does not have the wherewithal to fund a significant settlement.  And the law provides little relief against Hamilton County, the entity that does have the capacity fund a significant settlement.[3]

---

[1] The only remaining claim against the County is one premised on Wilkey's wrongful actions. *See* Tenn. Code Ann. § 8-8-302 ("Anyone incurring any wrong, injury, loss, damage or expense resulting from any act or failure to act on the part of any deputy appointed by the sheriff may bring suit against the county in which the sheriff serves; provided, that the deputy is, at the time of such occurrence, acting by virtue of or under color of the office.").

[2] A 2024 HCSO pay matrix suggests a sheriff's deputy would earn about $60,000 annually. During the recent trial of another matter, Wilkey testified that he now works as a heavy-equipment operator for Rhea County government.

[3] The County agreed to pay out the maximum amount allowable by Tennessee law to settle this lawsuit.  *See* Tenn. Code Ann. § 8-8-303(a).  In addition to the vicarious-liability claims that remain in the suit, Plaintiffs also initially brought *Monell* liability claims against the County for failing to train HCSO officers and maintaining a custom of tolerating constitutional violations by HCSO officers.  Though the Court dismissed these claims, it underscored the stringency of the applicable law and the extensiveness of the internal investigation complaints against then-Deputy Wilkey.  (*See* Doc. 684, at 41 ("Though Joint Plaintiffs have cited to other [internal affairs] investigations, they have not proferred sufficient evidence to demonstrate a clear and persistent

In consideration of the pertinent factors and based on the testimony presented at the settlement hearing (Doc. 780), the Court concludes that the proposed settlement agreement is fair and reasonable.

The Court must also assess whether the allocation of the settlement funds is in RGK's best interests. Counsel for Plaintiff explained that $25,000 of the $100,000 settlement would go to RGK, and another $25,000 would go to Bailey White. (Doc. 780, at 2.) The remaining $50,000 would be designated as attorney fees ($40,000) and litigation expenses ($10,000). (*Id.*) At the hearing, Smith stated that she believed the settlement and attorney fees were fair. She also pledged that the funds allocated for RGK would be used for his benefit to assist in his education, living expenses, and for the potential purchase of a vehicle. (*Id.* at 3.)

The Court must "consider and then determine what constitutes fair and reasonable compensation to the attorney regardless of any agreement specifying an amount, whether contingent or otherwise." *Dean v. Holiday Inns, Inc.*, 860 F.2d 670, 673 (6th Cir. 1988). In *Wright v. Wright*, 337 S.W.3d 166 (Tenn. 2011), the Tennessee Supreme Court held that when determining whether a settlement's provision of attorneys' fees are reasonable, courts may consider the following ten factors set forth in Tennessee Supreme Court Rule 8, Rule of Professional Conduct 1.5(a):

---

pattern of unconstitutional conduct, which 'must be [supported by] multiple earlier inadequate investigations and . . . concern comparable claims.'" (quoting *Stewart v. City of Memphis*, 788 F. App'x 341, 346 (6th Cir. 2019)).) Not surprisingly, Hamilton County had no reason to train Wilkey not to baptize citizens he had detained and cited for crimes.

(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) The fee customarily charged in the locality for similar legal services;

(4) The amount involved and the results obtained;

(5) The time limitations imposed by the client or by the circumstances;

(6) The nature and length of the professional relationship with the client;

(7) The experience, reputation, and ability of the lawyer or lawyers performing the services;

(8) Whether the fee is fixed or contingent;

(9) Prior advertisements or statements by the lawyer with respect to the fees the lawyer charges; and

(10) Whether the fee agreement is in writing.

*Id.* at 176–77 (quoting Tenn. Sup. Ct. R. 8, RPC 1.5(a)). These factors are not exclusive, and each factor may not be relevant in every case. *Id.* at 177 n.17.

The Court finds the requested attorneys' fees and expenses to be fair and reasonable given the complexity of the issues involved, the significant time each attorney devoted to the case, the risk the attorneys took on, and the importance of encouraging attorneys to take on such work. (*See* Doc. 780); *see also* Tenn. Sup. Ct. R. 8, RPC 1.5(a). The Court therefore **GRANTS** the motion to approve minor settlement of Plaintiff's claims (Doc. 780) and **APPROVES** the proposed settlement.

**SO ORDERED.**

/s/ *Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**